## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KAREN BRUMMELL, *et al*,          *

    Plaintiffs,          *

    v.          *          CIVIL NO. RDB-22-1601

TALBOT COUNTY
BOARD OF EDUCATION, *et al*,          *

    Defendants.          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Karen and Joseph Brummell bring this suit in a fourteen-Count Complaint on behalf of and as mother and father of Student Doe against Defendants Talbot County Board of Education (the "Board"), Diane Thomas, Indra Bullock, Ann Nilson,[1] and Gary Bramble for various claims stemming from alleged disparate treatment while Student Doe was a student at St. Michael's Elementary School in Talbot County, Maryland. (ECF No. 5.) Defendants Board of Education, Bullock, Nilson, and Bramble have filed a Motion to Dismiss (ECF No. 8),[2] Plaintiffs have responded in opposition (ECF No. 34), and the Defendants have replied (ECF No. 35). The Court has considered the filings and no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Defendants' Motion to Dismiss (ECF No. 8) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED as to six Counts of the Complaint, and is DENIED to the remaining eight Counts.

---

[1] The Defendants' Motion to Dismiss sets forth the correct spelling of Defendant Ann Nilson's last name.
[2] The records of this Court do not indicate that there has been any service of process upon the Defendant Thomas.

All Defendants remain subject to some of those eight Counts. Accordingly, the following claims remain pending[3]: Negligence (Count I) as to all Defendants, Battery (Count II) as to Defendant Thomas, Violation of Article 24 of the Maryland Declaration of Rights (Count III) as to Defendants Talbot Board and Thomas, Violation of Article 26 of the Maryland Declaration of Rights (Count IV) as to Defendants Board and Thomas, Gross Negligence (Count V) as to all Defendants, Violation of Fourth and Fourteenth Amendment under 42 U.S.C. § 1983 (Count X) as to Defendant Thomas, Violation of Fifth and Fourteenth Amendment under 42 U.S.C. § 1983 (Count XI) as to Defendant Thomas, and Violation of 42 U.S.C. § 1982 (Count XIII) as to Defendant Bramble.

The following claims are DISMISSED WITH PREJUDICE as to all Defendants: Violation of Maryland Code, State Government § 20-901 (Count VI), Breach of Fiduciary Duty (Count VII), Respondeat Superior (Count VIII), Violation of Title VI of the Civil Rights Act of 1964 (Count IX), Violation of 42 U.S.C. § 1981 (Count XII), and Violation of 42 U.S.C. § 1986 (Count XIV). Defendants shall answer the remaining claims within fourteen (14) days of the date of this Opinion and accompanying Order. Additionally, Plaintiffs are directed to apprise the Court whether Defendant Diane Thomas has been served with the Complaint within thirty (30) days of the date of this Opinion and accompanying Order.

## BACKGROUND

---

[3] The pending claims against all Defendants, except those asserted solely against Defendant Diane Thomas, shall proceed to discovery. Those claims against Defendant Thomas only – Battery (Count II), Violation of Fourth and Fourteenth Amendment under 42 U.S.C. § 1983 (Count X), and Violation of Fifth and Fourteenth Amendment under 42 U.S.C. § 1983 (Count XI) – remain pending, but shall not proceed to discovery until Defendant Thomas has been properly served and has had sufficient time to respond to the Complaint.

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Student Doe is a black male and was a student at St. Michael's Elementary School ("school") during the alleged incidents that occurred between 2015 - 2019 which gave rise to the Complaint. (ECF No. 5.) Each incident concerns bullying by a fellow student followed by alleged disparate treatment and reprimand to Student Doe by a member of the school. *Id.* Plaintiffs first allege that on October 29, 2015, a white student ("Bully 1"),[4] who had bullied Student Doe since 2013, called Student Doe an egregious racial slur. *Id.* at 4-5. Plaintiffs allege that the school falsely told Mr. Brummell that they contacted Bully 1's parents on three separate occasions. *Id.* at 4.

Plaintiffs next allege that on November 21, 2016, another white student ("Bully 2") threatened to physically attack Student Doe, and continued to make such threat for a week thereafter. *Id.* at 5. Student Doe reported this threat to his teacher, but the teacher failed to act. *Id.* Bully 2 eventually hit Student Doe in the head with a ball during physical education class, and Student Doe hit Bully 2 in return. (ECF No. 5 at 5.) The physical education teacher sent Bully 2 to the nurse and verbally reprimanded Student Doe. *Id.* Later in the afternoon, the physical education teacher called Mr. Brummell and stated, "we want to help these students before they end up in prison." *Id.* Mr. Brummell reported the conversation with the school. *Id.* The school stated that it had spoken with the physical education teacher about the

---

[4] The Complaint specifically refers to other students with the reference of "Bully." (ECF No. 5.) This Court does not make any factual finding in connection with the wording of "Bully" in the Complaint.

inappropriate comment immediately after it was reported, but the Brummells later learned that the school only contacted the teacher about the conversation about a month after it happened. *Id.* at 6. Defendant Ann Nilson, a guidance counselor at St. Michael's School, contacted Mr. Brummell about Student Doe's involvement in the altercation during the physical education class, to which Mr. Brummell informed Defendant Nilson that he raised his son to defend himself. (ECF No. 5 at 6.) Defendant Nilson replied "is this how you want to raise your child?" *Id.* Plaintiffs believe Defendant Nilson's response to be racially motivated. *Id.*

On January 18, 2017, Student Doe was playing tag in the hallway. *Id.* His teacher, Defendant Diane Thomas, picked up Student Doe from behind and "slammed him into the ground." *Id.* Student Doe was never sent to the nurse to be evaluated for injuries. (ECF No. 5 at 6.) In recounting the incident with Mr. Brummell, Defendant Thomas told him that Student Doe was misbehaving and attacked her, and that she tried to carry him back to class and dropped him because he was kicking her. *Id.* Defendant Thomas told Mr. Brummell that "we have to discipline these children, if we let one of them get away with this kind of behavior they all will think they can do it." *Id.* Plaintiffs allege that surveillance footage shows Defendant Thomas' summary of events to be false. *Id.* The school did not reprimand Defendant Thomas for her behavior. *Id.*

On April 4, 2017, Student Doe briefly stepped out of the lunch line, and when he attempted to return to his spot, a white student ("Bully 3") pulled Student Doe by his shirt, shoved him to the floor, and struck him. (ECF No. 5 at 7.) Student Doe "responded in self-defense" and Defendant Indra Bullock, the school principal, sent Bully 3 to the nurse for his

injuries. *Id.* Defendant Bullock told Student Doe to continue through the lunch line and did not send him to the nurse for assessment. *Id.*

On September 5, 2017, Student Doe was assaulted by a white student ("Bully 4") while riding the bus. *Id.* at 8. Student Doe "defended himself" and Defendant Gary Bramble, the school bus driver, reprimanded Student Doe for attacking Bully 4. *Id.* Defendant Bramble told Student Doe that he would not tell his parents about the incident. (ECF No. 5 at 8.) A couple days later, on September 7, 2017, "multiple white students" bullied Student Doe while riding home on the bus and Student Doe stood up for himself. *Id.* Defendant Bramble told Student Doe to sit down and "told the white students to please turn around and face forward." *Id.* Defendant Bramble told the white students that he would call Student Doe's father. *Id.* Defendant Bramble called Mr. Brummell and stated that Student Doe was causing problems on the bus and picking on little girls. *Id.* Plaintiffs allege that video surveillance shows Defendant Bramble's summary of events to be false. *Id.* at 9. The Brummells reported the incident to the school and no action was taken. (ECF No. 5 at 9.) A few days later, on September 11, 2017, Student Doe and a little girl were playing on the bus ride home. *Id.* The little girl got out of her seat to touch Student Doe, and Defendant Bramble yelled at Student Doe to keep his hands to himself and stay seated. *Id.* Bramble did not reprimand the little girl, who was white. *Id.*

During the 2017-2018 school year, Student Doe was bullied by an older white student ("Bully 5") almost daily while riding the bus. *Id.* Bully 5 stole Student Doe's things, went through his bag, and used derogatory language toward him. *Id.* In one of Bully 5' instances of bullying, Student Doe "defend[ed] himself" and Defendant Bramble yelled at Student Doe,

threatening that he would no longer be able to ride the bus home. (ECF No. 5 at 10.) Mr. and Mrs. Brummell reported each incident concerning Bully 5 to the school, and even requested seat rearrangements on the bus, but the school took no action. *Id.* at 9-10. Defendant Bramble then began to throw trash into Plaintiffs' yard daily as retaliation for the Brummells' complaints to the school. *Id.* Plaintiffs filed an incident report concerning Defendant Bramble's deliberate littering with the Talbot County Sherriff's Office. *Id.*

On September 15, 2017, Student Doe was in the restroom in the school cafeteria, which had a one student at a time policy, when a white student ("Bully 6")[5] entered the restroom and kicked Student Doe. *Id.* Student Doe retreated into a stall and locked the door. *Id.* When Student Doe exited the stall, Bully 6 attacked Student Doe and Student Doe defended himself. *Id.* Student Doe left the restroom and told school staff about the incident, who told Student Doe to sit down and directed Bully 6 to the nurse. *Id.* No further action was taken.

On June 5, 2018, Student Doe was in Defendant Thomas' music class when Defendant Thomas asked students in the class to raise their hand if Student Doe had bullied or hit them. (ECF No. 5 at 11.) Defendant Thomas then asked Student Doe to observe the number of hands raised from the front of the class which indicated how many people he had bullied or hit. *Id.* Student Doe said he had not bullied or hit any of the students, yet Defendant Thomas reiterated that he had. *Id.* This incident was reported to the school and no action was taken. *Id.*

---

[5] Plaintiffs' Complaint references this student as "Bully 5." (ECF No. 5 at 10.) Hereinafter, the numbering of the "bullies" in this Memorandum Opinion no longer comports with the numbering set forth in the Complaint.

From September 2018 until at least January 2019, a white student ("Bully 7") bullied Student Doe through intimidation and eventual physical misconduct. *Id.* Each event was reported to the school. *Id.* On January 23, 2019, Bully 7 purposefully tripped Student Doe as he was walking to class, and Student Doe suffered injuries. (ECF No. 5 at 11.) A report about the incident was filed and the school stated they would move Bully 7 to another school. *Id.* By April 5, 2019, Bully 7 was still at St. Michael's School, and Bully 7 again tripped Student Doe. *Id.* This time, Student Doe hit his head on the floor and suffered a severe injury. *Id.* The school did not call medical providers, but instead called Mrs. Brummell who took Student Doe to the emergency room. *Id.* at 12.

On May 13, 2019, a white student ("Bully 8") threw pencils at Student Doe's head during class while teachers were present. (ECF No. 5 at 12.) The school took no action to correct this behavior. *Id.* On May 31, 2019, Bully 8 told Student Doe that "all black people have poop on their head" and that "blacks came to America to work for white people for free and so blacks are not allowed to play with white kids." *Id.* The substitute teacher present at the time took no action. *Id.*

Plaintiffs allege that each of these instances and the school's continuous inaction show that the school had a greater concern for white students' health than black students' health, and that Student Doe's safety was not a concern. *Id.* Plaintiffs assert that Student Doe's experiences align with school data which illustrates that black students make up for 80% of discipline referrals despite accounting for 20% of the student population. *Id.* As a result, Plaintiffs filed the instant Complaint on April 5, 2022, in the Circuit Court for Talbot County

in the State of Maryland. (ECF No. 1.) Plaintiffs' Complaint lodges fourteen Counts[6] against the Defendants: Negligence (Count I), Battery (Count II), Violation of Article 24 of the Maryland Declaration of Rights (Count III), Violation of Article 26 of the Maryland Declaration of Rights (Count IV), Gross Negligence (Count V), Violation of Maryland Code, State Government § 20-901 (Count VI), Breach of Fiduciary Duty (Count VII), Respondeat Superior (Count VIII), Violation of Title VI of the Civil Rights Act of 1964 (Count IX), Violation of Fourth and Fourteenth Amendment under 42 U.S.C. § 1983 (Count X), Violation of Fifth and Fourteenth Amendment under 42 U.S.C. § 1983 (Count XI),[7] Violation of 42 U.S.C. § 1981 (Count XII), Violation of 42 U.S.C. § 1982 (Count XIII), and Violation of 42 U.S.C. § 1986 (Count XIV). The Counts do not clearly delineate which Defendant is implicated,[8] but instead are merely captioned as "Plaintiff(s) v. Defendant(s)."

On June 29, 2022, Defendants Talbot County Board of Education, Indra Bullock, Ann Nilson, and Gary Bramble removed the case to this Court, pursuant to 28 U.S.C. § 1331 based upon federal question jurisdiction in light of some of the federal claims asserted. (ECF No. 1.) In their notice of removal, those Defendants indicated that Defendant Diane Thomas' attorney represented that Thomas had not yet been served. *Id.* As of the date of this Memorandum Opinion, Defendant Thomas has not filed an answer or otherwise responded to the Complaint in this Court.

---

[6] In analyzing a motion to dismiss a complaint against a school board with similar pleading structure, Judge Hollander of this Court has commented that the practice of lodging high-volume-count complaints is the "proverbial 'kitchen sink' approach." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 399 (D. Md. 2022).
[7] Plaintiffs' Complaint erroneously lists this Count as against "Defendants Board, Hahn, Peter, & Whittaker", who are not named Defendants in this case. (ECF No. 5 at 24.)
[8] Count II is the only exception, which states that it is asserted against Defendants Thomas, Bullock, Nilson, and Bramble. (ECF No. 5 at 16.) Plaintiffs have since amended Count II to be asserted against Defendant Thomas only. (ECF No. 34 at 5.)

Defendants Board, Bullock, Nilson, and Bramble subsequently filed a Motion to Dismiss (ECF No. 8), which was amended by their partial Answer thereafter (ECF No. 32), arguing to dismiss Counts II-XIV. As a preliminary matter, Defendants argue that Plaintiffs' allegations pre-dating April 5, 2019, are time-barred as Plaintiffs' various claims hold a three-year statute of limitations. (ECF No. 8-2 at 4.) Conversely, Plaintiffs contend that their claims are not time-barred under a "continuation of events theory" due to the Defendants' *in loco parentis* relationship with Student Doe. (ECF No. 34 at 5.) Plaintiffs have agreed to withdraw their claim of battery in Count II against all Defendants except Defendant Thomas, and they have agreed to withdraw their claim under 42 U.S.C. § 1986 claim in Count XIV. *Id.* at 3. For the reasons explained below, the pending Motion to Dismiss (ECF No. 8) shall be GRANTED IN PART and DENIED IN PART.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

Defendants have filed a partial Answer to Count I, Plaintiffs have withdrawn Count II against all Defendants except Defendant Diane Thomas,[9] and Plaintiffs have withdrawn Count XIV in its entirety as to all Defendants. Accordingly, the Court will address Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, and XIII in turn, and some Counts are consolidated where appropriate. Importantly, where a claim is insufficiently alleged, this Court will dismiss that claim *sua sponte* as to all Defendants when appropriate, despite that the fact that Defendant Thomas has not joined in the instant Motion to Dismiss. *See Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F. Supp. 3d 497, 506-07 (D. Md. 2014) (citing materials and stating "the Court may

---

[9] The instant Motion to Dismiss was filed by Defendants Talbot County Board of Education, Bullock, Nilson, and Bramble. As previously stated, Defendant Diane Thomas has not filed an answer or otherwise responded to the Complaint. Accordingly, Count II remains in effect as to Defendant Diane Thomas, and is not analyzed in this Opinion.

dismiss a complaint for failure to state a claim *sua sponte* if it plainly fails to state a claim for relief on its face") (internal citations omitted).

## I.      Statute of Limitations

Defendants assert that "the statute of limitations is three years or less for all of the legally existent claims Plaintiffs have asserted" and therefore any claim predicated on those time-barred events must be dismissed. (ECF No. 8-2 at 4.) Plaintiffs seemingly concede that the applicable statute of limitations for their claims is three years, but argue that the limitations have tolled because the "continuation of events theory" applies. (ECF No. 34 at 5.) The parties agree that Maryland law provides the appropriate statute of limitations analysis.

Maryland law recognizes a "'continuation of events' theory, a corollary accrual doctrine, which serves to toll the statute of limitations where a continuous relationship exists between the parties." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 974 (Md. 2000). The theory is based on the notion that "a relationship which is built on trust and confidence generally gives the confiding party the right to relax his or her guard and rely on the good faith of the other party so long as the relationship continues to exist." *Id.* at 975. Importantly, the confiding party "is under no duty to make inquiries about the quality or bona fides of the services received, unless and until something occurs to make him or her suspicious." *Id.* However, when the confiding party becomes aware that the special relationship has been abused, "the applicable statute of limitations runs from the time the confiding party receives actual knowledge or the facts which placed him or her upon inquiry notice." *Id.* at 976.

As Plaintiffs appropriately note, and Defendants do not dispute, the continuation of events theory is applicable to their claims due to the continuous *in loco parentis* relationship

between the school and Student Doe. (ECF No. 34 at 5); *see Lunsford v. Bd. of Ed. of Prince George's Cnty.*, 374 A.2d 1162, 1168 (Md. 1977) ("the relation of a school vis a vis a pupil is analogous to one who stands in loco parentis"). The parties' positions diverge as to when the Plaintiffs were put on inquiry notice that the school failed to act when Plaintiffs complained of bullying. Plaintiffs argue that they had knowledge of the school's failure to act on April 5, 2019, when Bully 7 tripped Doe and the Brummells learned that the school had not moved Bully 7 to another school as promised. (ECF No. 34 at 5.) Defendants contend that the statute of limitations began to run at the time of the first incident of bullying that was reported to the school.

Viewed in the light most favorable to Plaintiffs as the non-moving party, the statute of limitations began to run on April 5, 2019, when Mr. and Mrs. Brummell had actual knowledge that the school failed to act and had not moved Bully 7 to another school as indicated. As Plaintiffs highlight, their consistent reporting to the school of the alleged constant bullying supports the notion that Plaintiffs "relied in good faith on Defendants addressing their concerns and in protecting Student Doe." (ECF No. 34 at 5.) Although the Brummells now have knowledge about the school's alleged inaction, there is no indication that they should have been on inquiry notice prior to learning that the school had expressly broken their promise to remove Bully 7 from the school. Accordingly, the statute of limitations was tolled until April 5, 2019. As a result, all of Plaintiffs' alleged instances of inaction by the school based on events of bullying contained in the Complaint are admissible in support of Plaintiffs' claims because the statute of limitations was tolled until April 5, 2019, and the Complaint was timely filed on April 5, 2022.

## II.     Violation of Article 24 of the Maryland Declaration of Rights (Count III)

Plaintiffs' Article 24 claim is not entirely clear. The Complaint alleges that the Board "adopted a policy, pattern, and/or practice of inaction that facilitated the abuse of Plaintiff(s)" and "provided less process than was due." (ECF No. 5 at 17-18.) Plaintiffs also generally assert that the individually-named Defendants acted as the Board's agents, and that the Board is vicariously liable for those individual Defendants' violations of Article 24. *Id.* at 18. Plaintiffs' Opposition hardly clarifies their argument, but instead explains the principle that application of an Article 24 claim is not always beholden to the confines of a Fourteenth Amendment claim. (ECF No. 34 at 6-12.) The Court interprets Plaintiffs' allegations to be a *Longtin* claim asserted against the Board, and an attempt to hold the Board vicariously liable for Defendant Thomas' alleged battery.

Article 24 of the Maryland Declaration of Rights ensures that "no man ought to be…deprived of his life, liberty or property." Md. Const. Decl. of Rts., art. XXIV ("Article 24").  In its guarantees and application, Article 24 "is the state law equivalent of the Fourteenth Amendment of the United States." *Rosa v. Bd. of Educ. of Charles Cnty., Md.*, No. 8:11-CV-02873-AW, 2012 WL 3715331, at *6 (D. Md. Aug. 27, 2012) (citing *Pitensberger v. Pitensberger*, 410 A.2d 1052, 1056 (Md. 1980)). Accordingly, as a substantive matter, Article 24 is interpreted coextensively with the Fourteenth Amendment to the U.S. Constitution. *Taylor v. Go-Getters, Inc.*, 20-cv-3624, 2021 WL 5840956, at *16 (D. Md. Dec. 9, 2021).

Otherwise known as a *Longtin*[10] claim, a plaintiff may bring an Article 24 claim which "provides protection to individuals against unconstitutional 'pattern or practices' of municipalities." *Prince George's Cnty. v. Longtin*, 19 A.3d 859, 887 (Md. 2011). However, "[i]t is well-settled in Maryland that the 'Court of Appeals[11] undoubtedly considers county school boards instrumentalities of the State rather than independent, local bodies.'" *Rosa*, 2012 WL 3715331, at *10 (quoting *Zimmer–Rubert v. Bd. of Educ. of Balt. Cnty.*, 179 Md.App. 589, 947 A.2d 135, 141–42 (Md. Ct. Spec. App. 2008) (citing cases)). As a result, a *Longtin* claim, "which extends pattern or practice liability to local governments" is inapplicable against a school board as it is an instrument of the state. *Id.*; *see also Gandy v. Howard Cnty. Bd. of Educ.*, No. CV GLR-20-3436, 2021 WL 3911892, at *12 (D. Md. Sept. 1, 2021) ("while [the school board] may ultimately be liable to the [plaintiffs] for the constitutional torts of [the individual defendants], the [plaintiffs] cannot bring state or federal constitutional claims against [the school board] directly"). Consequently, Plaintiffs' "pattern or practice" argument under Article 24 fails.

Turning to Plaintiffs' assertion that Defendants "provided less process than was due", to the extent that Plaintiffs seek to hold the Board vicariously liable for Defendant Thomas' alleged battery, such claim shall be permitted to discovery. "Liberty from bodily restraint lies at the core of the liberty protected by the Due Process Clause of the Fourteenth Amendment." *Gandy*, 2021 WL 3911892, at *11 (citing *H.H. ex rel. H.F. v. Moffett*, 335 F.App'x 306, 313 (4th Cir. 2009)). Defendant Board argues that Defendant Thomas' act of "slamming" Student Doe to the ground was outside the scope of her employment, thereby negating any theory of

---

[10] A *Longtin* claim is a cause of action whereby a plaintiff can hold a municipality liable under Maryland law for unconstitutional patterns or practices. *Prince George's Cnty. v. Longtin*, 19 A.3d 859, 887 (Md. 2011).
[11] The Maryland Court of Appeals is now named the Supreme Court of Maryland.

various liability. (ECF No. 8-2 at 16-19.) Although Defendants are correct in that the Board cannot be held liable for employees' acts done outside of the scope of employment, Defendant Thomas' alleged actions are not clearly outside of her scope of employment. *See Hunter v. Bd. of Educ. of Montgomery Cnty.*, 439 A.2d 582, 587 n.8 (Md. 1982) (a board can "be held liable for the intentional torts of its employees committed while acting within the scope of their employment.").

Plaintiffs allege that Defendant Thomas physically picked up and "slammed" Student Doe to the floor in the school hallway because Defendant Thomas stated he was "misbehaving" and she needed to "discipline" his behavior. (ECF No. 5 at 6.) Plaintiffs additionally allege that the school took no action against Defendant Thomas for this behavior, arguably ratifying Thomas' alleged physicality and, at a minimum, sustaining that this type of behavior was within the scope of her employment. Accordingly, in the light most favorable to the Plaintiffs, this Count may proceed to discovery against the Defendant Board under a theory of vicarious liability for Defendant Thomas' actions.

Conversely, Plaintiffs have failed to sufficiently allege any constitutional claims against any of the other individually-named Defendants beyond vague and conclusory statements. Therefore, to the extent that Plaintiffs assert an Article 24 claim against Defendants Bullock, Nilson, and Bramble, such claim fails and shall be dismissed as to those Defendants.

### III.   Violation of Article 26 of the Maryland Declaration of Rights (Count IV)

Article 26 of the Maryland Declaration of Rights bestows due process in seizure of person or property. Md. Const. Decl. of Rts., art. XXIV. Article 26 ensures the same protections afforded by the Fourth Amendment, and is interpreted and applied

15

correspondingly. *Dennis*, 21 F. Supp. 3d at 504. "The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of seizures effectuated by excessive force." *Gandy*, 2021 WL 3911892, at *11 (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)) (internal quotations and citation omitted). "In the context of schools, use of force against students must be 'reasonably related in scope to the circumstances which justified [it] in the first place.'" *Id.* (quoting *Wofford v. Evans*, 390 F.3d 318, 326 (4th Cir. 2004)).

Similar to their Article 24 claim, Plaintiffs allege that the Board had "an official policy of inaction" – for the reasons explained above, this *Longtin* claim fails against the Board. Plaintiffs also summarily state that the Board is vicariously liable for violation(s) of Plaintiffs' rights under Article 26 without pointing to any specific violation or otherwise clarifying their position. In the light most favorable to Plaintiffs, the Court interprets their arguments to hold the Board vicariously liable for Defendant Thomas' alleged battery as a use of excessive force in violation of the Fourth Amendment, and will permit this claim to proceed to discovery. *See Gandy*, 2021 WL 3911892, at *11 (finding that allegations plausibly suggest teacher's use of force "exceeded its reasonable scope" and thus Article 26 claim was permitted to proceed to discovery). As with the Article 24 claim, Plaintiffs have failed to plead an Article 26 claim or an otherwise Fourth Amendment constitutional violation against the remaining individually-named Defendants. Consequently, this claim shall be dismissed against Defendants Bullock, Nilson, and Bramble.

## IV. Gross Negligence (Count V)

A claim for gross negligence requires allegations of "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of

another which implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Gandy*, 2021 WL 3911892, at *6 (internal quotations and citations omitted). "A defendant acts with wanton and reckless disregard for others only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669–70 (D. Md. 2012) (quoting *Markevicz v. Garcia*, Civil Action No. 8:08–cv–02877–AW, 2011 WL 6888641, at *2 (D. Md. Dec. 29, 2011)) (internal quotations and citation omitted). The "distinction between negligence and gross negligence" is "a difficult one to establish in practice," and a "legally sufficient case of ordinary negligence will frequently be enough to create a jury question of whether such negligence was or was not gross." *Beall v. Holloway-Johnson*, 130 A.3d 406, 415 (Md. 2016) (quotations and citation omitted). This Court has found that where a plaintiff's claim of negligence survives the dismissal stage, a claim for gross negligence may also properly proceed to discovery. *See Doe #1 v. Bd. of Educ. of Somerset Cnty.*, No. CV RDB-22-1491, 2023 WL 375189, at *5 (D. Md. Jan. 24, 2023) ("the court concludes that, at minimum, the plaintiffs must be permitted to conduct discovery before a distinction between negligence and gross negligence can be drawn in this case.").

Plaintiffs' various instances of alleged discrimination from both students and school personnel alike, coupled with the school's inaction to remedy such behavior, constitute a plausible claim that the Defendants acted indifferently to Student Doe's rights. Furthermore, Plaintiffs' negligence claims as to all Defendants are already proceeding to discovery, and such "sufficient case of ordinary negligence" is enough to propel Plaintiffs' gross negligence claim to discovery as well. Accordingly, this claim shall proceed to discovery as to all Defendants.

17

## V.      Violation of Maryland Code, State Government § 20-901 (Count VI)

Plaintiffs assert that the Defendants violated Md. Code Ann., State Gov't § 20-901 by exhibiting discriminatory behavior in the school's cafeteria and lunchroom. (ECF No. 34 at 17.) Even if this Court were to consider the school's cafeteria and lunch room as appropriately within the statute's ambit, "Maryland law 'does not give rise to a private right of action' for discrimination in places of public accommodation." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 407 (D. Md. 2022) (quoting *Gandy*, 2021 WL 3911892, at *10). Instead, Maryland law provides an administrative remedy with the Maryland Commission on Civil Rights for allegations of discrimination in places of public accommodation. *Id.* Plaintiffs do not purport to have exhausted, or even pursued, that remedy. Thus, Plaintiffs' claim for violation of Maryland Code, State Government § 20-901 in Count VI fails and shall be DISMISSED as to all Defendants.

## VI.      Breach of Fiduciary Duty (Count VII)

"To establish a breach of fiduciary duty as an independent cause of action in Maryland, a plaintiff must demonstrate: '(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Gandy*, 2021 WL 3911892, at *5 n.4 (D. Md. Sept. 1, 2021) (quoting *Plank v. Cherneski*, 231 A.3d 436, 466 (Md. 2020)). The fiduciary relationship may be a product of common law, statute, or contract. *Id.*

Plaintiffs have failed to allege that the Defendants owed them a fiduciary duty. Plaintiffs rationalize that an *in loco parentis* relationship between the school and Student Doe naturally includes a fiduciary responsibility because there exists a fiduciary relationship between a parent and child. (ECF No. 34 at 27.) There is no statute or contract that validates Plaintiffs' theory

18

of a fiduciary relationship, and Plaintiffs have not provided any Maryland common law, or otherwise, that supports their reasoning. Instead, the Supreme Court of Maryland has interpreted a school's *in loco parentis* status to establish duty in negligence cases, but no court has extended this relationship to encompass fiduciary responsibilities. *See Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 281 A.3d 876, 899 (Md. 2022) (*in loco parentis* relationship establishing duty in negligence claim). Accordingly, Plaintiffs' claim for violation of a fiduciary duty in Count VII fails and shall be DISMISSED as to all Defendants.

## VII.   Respondeat Superior (Count VIII)

*Respondeat superior* is a theory of liability, not a freestanding claim. *See Mason v. Bd. of Educ.*, No. CIV.A. WMN-10-3143, 2011 WL 89998, at *2 n.3 (D. Md. Jan. 11, 2011) ("Respondeat superior is not a separate cause of action, but rather a doctrine that permits the imputation of liability on a principal or employer for the act of an agent or employee"); *Ross v. Prince George's Cnty., MD*, No. CIV.A. DKC 11-1984, 2012 WL 1204087, at *1 n.1 (D. Md. Apr. 10, 2012) ("*Respondeat superior* is a theory of liability, not an independent cause of action"). Accordingly, Plaintiffs' *respondeat superior* claim in Count VIII is DISMISSED as to all Defendants.

## VIII.   Violation of Title VI of the Civil Rights Act of 1964 (Count IX)

As a preliminary matter, Title VI claims are not cognizable against individuals, so this claim will be dismissed as to the individually-named Defendants. *See Farmer v. Ramsay*, 41 F. Supp. 2d 587, 592 (D. Md. 1999) (proper defendant for Title VI case is entity not individual). Title VI prohibits programs that receive federal funds from discriminating on the basis of race. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). Title VI "operate[s] in the same

manner" as Title IX, "conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Id.* A school board violates Title VI when a school official has actual knowledge of discrimination, authority to implement corrective measures to address the discrimination, and yet responds to the discrimination with deliberate indifference. *Baynard v. Malone*, 268 F.3d 228, 237 (4th Cir. 2001). The deliberate indifference standard is satisfied where the response is "clearly unreasonable." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648-49 (1999).

Plaintiffs allege that the multiple instances of bullying and the disparate treatment in reaction to that bullying were each reported to school personnel and the school was deliberately indifferent. (ECF No. 34 at 32.) Defendants argue that Plaintiffs have failed to plead that the proper school official had knowledge of the discrimination to implicate the Board. (ECF No. 8-2 at 26.) In support, Defendants assert that the school principal is not an appropriate person "with knowledge" to implicate the Board for employee-student discrimination claims, but concede that a principal may appropriately have knowledge for Title VI student-student discrimination allegations. *Id.* Nonetheless, Defendants argue, only Defendant Nilson, a school counselor and appropriate school official, had actual knowledge of just one instance of misconduct, and she affirmatively responded by contacting Mr. Brummell. *Id.*

Plaintiffs' allegations fall short of pleading that the Board, or an appropriate person, was made aware of the alleged discrimination. At various points in the Complaint, Plaintiffs allege that they reported instances of bullying and discrimination to "the school" and that "the

school" knew about such conduct. However, Plaintiffs' Complaint fails to identify which school official, if any, with the authority to implement corrective measures had actual knowledge of the discrimination. In other words, Plaintiffs have failed to plead that they reported each of these instances to either Defendant Bullock as principal or to the Defendant Board directly to give rise to Title VI liability. Without this element, Plaintiffs' claim is insufficient plead, and their Title VI claim must be DISMISSED.

### IX.   Violation of Fourth and Fourteenth Amendment Under 42 U.S.C. § 1983 (Count X) and Violation of Fifth and Fourteenth Amendment Under 42 U.S.C. § 1983 (Count XI)

Section 1983 creates a cause of action against any "*person* who," acting "*under color of state law*", deprives another of their constitutional rights. *See* 42 U.S.C. § 1983 (emphasis added). *see also Monroe v. Pape*, 365 U.S. 167, 183 (1961) (a state official violating state law in the line of duty acts under color of state law for purposes of individual capacity § 1983 suits). § 1983 provides a cause of action only against "persons." "Maryland Courts have clearly established" that a county education board "is not a 'person,' but instead is a state agency, and therefore is not subject to any liability under 42 U.S.C. § 1983." *Hanifee v. Bd. of Educ. of Kent Cnty.*, No. 09-cv-2381, 2010 WL 723772, at *6 (D. Md. Feb. 24, 2010); *see also Dennis*, 21 F. Supp. 3d at 501–02 ("Because the Board and individually named Defendants in their official capacities are a county school board and school officials, they are not "persons" and cannot be sued under § 1983."). Accordingly, this claim is dismissed as to the Board Defendant and the individually-named Defendants to the extent that the claim is brought against them in their capacity as school officials.

21

As the Article 24 and Article 26 claims were analyzed, Plaintiffs have failed to properly plead constitutional violations implicating Defendants Bullock, Nilson, and Bramble. As a result, Counts X and XI shall be dismissed as these individuals, but will remain in effect as to Defendant Thomas for the reasons explained above.

## X.      Violation of 42 U.S.C. § 1981 (Count XII)

Plaintiffs clarify that they assert a 42 U.S.C. § 1981 claim against the individually-named Defendants for "an official policy or custom of discrimination." (ECF No. 34 at 31.) Section 1981 guarantees equal rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. "To state a claim premised upon 42 U.S.C. § 1981, a plaintiff must show three elements: '(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute.'" *Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 394 (D. Md. 2011) (quoting *Baltimore–Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 699 (D. Md. 2003)). Although Plaintiffs have alleged membership in a racial minority group and intentional discrimination generally, they have failed to provide a clear statement alleging discrimination related to a right protected by § 1981 specifically. Plaintiffs vaguely reference the Fourteenth Amendment in their Complaint, but have failed to expound upon how any of the individually-named Defendants, except potentially Defendant Diane Thomas, violated Plaintiffs' constitutional rights. Furthermore, as Defendants aptly note, § 1983, and not § 1981, is the appropriate avenue for a Fourteenth Amendment claim. Accordingly, Count XII shall be DISMISSED as to all Defendants.

XI.     **Violation of 42 U.S.C. § 1982 (Count XIII)**

Plaintiffs generally allege the Defendants violated 42 U.S.C. § 1982 in interfering with their property right to education, and specifically allege that Defendant Bramble interfered with their right to real property when he "dumped garbage" on their front lawn. (ECF No. 24 at 36.) Section 1982 secures equal rights to "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To state a claim under § 1982, a plaintiff must allege "(1) membership in a protected class; (2) discriminatory intent on the part of the defendant and (3) interference with the rights or benefits connected with the ownership of property." *White v. City of Annapolis by & through City Council*, 439 F. Supp. 3d 522, 541-42 (D. Md. 2020) (quoting *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004)). There is no dispute that the plaintiffs here have sufficiently alleged membership in a protected class and intentional discrimination.

As to Plaintiffs' first allegation under this Count, the parties contest whether the property interest in education is the kind of property right § 1982 protects. Plaintiffs' Complaint and Opposition summarily state that the right to education is a property interest, but as Defendants note, such assertion is not founded in law. *Washington v. Michigan Dep't of Educ.*, 758 F.2d 654 (6th Cir. 1985) ("Section 1982 does not recognize education as a protected property interest."); *Gonzalez v. S. Methodist Univ.*, 536 F.2d 1071, 1072 (5th Cir. 1976) (right to education not within the scope of § 1982). Therefore, Plaintiffs' 42 U.S.C. § 1982 claim predicated on that theory fails.

As to Plaintiffs' second allegation under this Count, Defendants argue that the specific claim against Defendant Bramble must be dismissed because it is time barred. As previously

addressed, the Court has found that Plaintiffs have sufficiently alleged a continuation of events theory thereby discrediting Defendants' argument. Otherwise, Plaintiffs' Complaint has sufficiently alleged that Defendant Bramble's purposeful littering on the Brummell's property interfered with their ownership rights. Accordingly, Plaintiffs' Complaint has properly plead the elements of a 42 U.S.C. § 1982 claim against Defendant Bramble, and this Count shall proceed to discovery as to Defendant Bramble only.

## CONCLUSION

For the reasons stated above, Defendants Talbot County Board of Education, Indra Bullock, Ann Nilson, and Gary Bramble's combined Motion to Dismiss (ECF No. 8) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED as to Counts VI, VII, VIII, IX, XII, and XIV, which are DISMISSED WITH PREJUDICE. The Motion is DENIED as to Counts I, II, III, IV, V, X, XI, and XIII.

A separate Order follows.

Dated: March 16, 2023                                  _____/s/_____
                                                       Richard D. Bennett
                                                       United States District Judge