**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **KAREN BRUMMELL, *et al.*,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **Civ. No. MJM-22-1601** |
| **v.** | * | |
| | * | |
| **TALBOT COUNTY BOARD OF** | * | |
| **EDUCATION, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Plaintiffs Karen Brummell, Joseph Brummell, and their minor child Student Doe (collectively, "Plaintiffs") filed this civil action against The Board of Education of Talbot County (the "Board"), Indra Bullock, Ann Nilson, Gary Bramble (collectively, the "Board Defendants"), and Diane Thomas (collectively, "Defendants") for various federal and state constitutional violations, other federal civil rights claims, and state law claims. This matter is before the Court on Ms. Thomas's Motion for Summary Judgment, ECF No. 79, and the Board Defendants' Motion for Summary Judgment, ECF No. 80. Both motions are fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant both motions as they relate to federal claims, Counts X and XIII, and shall remand the remaining state law claims, Counts I through V, back to the Circuit Court for Talbot County, Maryland.

1

## I.     BACKGROUND

### A.  Procedural Background

On April 5, 2022, Plaintiffs filed a 14-count Complaint in the Circuit Court for Talbot County, Maryland against the Board Defendants, and Ms. Thomas. ECF No. 5. The case was removed to this Court in June 2022. ECF No. 1. The Board Defendants filed a motion to dismiss, ECF No. 8, which was granted in part and denied in part, ECF Nos. 36 & 37. Following service of a summons, Ms. Thomas filed a motion to dismiss, ECF No. 47, which was denied, ECF Nos. 61 & 62.

After the partial dismissal of claims against the Board Defendants, the remaining counts are as follows: Count I, a negligence claim against all Defendants; Count II, a battery claim against Ms. Thomas; Count III, a claim for violation of Article 24 of the Maryland Declaration of Rights against Ms. Thomas and the Board; Count IV, a claim for violation of Article 26 of the Maryland Declaration of Rights against Ms. Thomas and the Board; Count V, a gross negligence claim against all Defendants; Count X, a 42 U.S.C. § 1983 claim for violation of the Fourth and Fourteenth Amendments against Ms. Thomas; and Count XIII, a claim for violation of 42 U.S.C. § 1982 against Mr. Bramble.

Ms. Thomas and the Board Defendants both filed motions for summary judgment. ECF Nos. 79 (Ms. Thomas) & 80 (the Board Defendants). Both motions are fully briefed.

### B.  Factual Background

This case involves the alleged mistreatment of Student Doe, a minor child, while he was a student at St. Michaels Elementary School ("SMES"), Talbot County Public Schools ("TCPS"). Plaintiffs allege that Student Doe suffered 15 incidents of mistreatment between October 29, 2015,

and May 31, 2019. Student Doe is a black male. ECF No. 5, ¶ 16; ECF No. 84-10 (Plaintiffs' Exhibit D).

### 1. Incident 1 – October 29, 2015 (ECF No. 5, ¶¶ 22–30)

The first incident was an altercation between Student Doe and Student #1,[1] a white student, alleged to have occurred on October 29, 2015. ECF No. 5, ¶¶ 22–30. Student Doe began attending SMES for pre- kindergarten during the 2015–2016 school year. ECF No. 80-2 at 41:8–18 (Board Defendants' Exhibit 1, deposition of Mr. Brummell). Plaintiffs contend that on or about October 29, 2015, Student #1 pushed Student Doe into the mulch. ECF Nos. 84-7 (Plaintiffs' Exhibit C, email from Mr. Brummell on Oct. 30, 2015); ECF No. 84-1 (Plaintiffs' Exhibit A, Bullying, Harassment or Intimidation Reporting Form, dated Oct. 30, 2015). Plaintiffs also contend that Student #1 called Student Doe a racial slur. ECF No. 84-16 (Plaintiffs' Exhibit F, email from Mr. Brummell to Mrs. Tracy Elzey) ("This child . . . is believed to have called our son . . . a N____r . . . ."). Mr. Brummell was not present at the school during the alleged October 29, 2015, incident, ECF No. 80-2 at 60:1–13, and does not know what action the school took in response, *id.* at 63:3–6. Student Doe does not remember being bullied by another student or other students using racial slurs towards him. ECF No. 80-4 at 7:2–11 (Board Defendants' Exhibit 3, deposition of Student Doe).

### 2. Incident 2 – November 21, 2016 (ECF No. 5, ¶¶ 31–45)

The second incident was an altercation between Student Doe and Student #2, a white student, alleged to have occurred on November 21, 2016. ECF No. 5, ¶¶ 31–45. Student Doe attended SMES for kindergarten during the 2016–2017 school year. ECF No. 80-3 at 105:1–5

---

[1] The students involved in the alleged incidents are identified through consecutive numbering in this Memorandum. This numbering of students is not intended to be consistent with the numbering used in either the Complaint or the parties' motion papers.

(Board Defendants' Exhibit 2, transcript of TCPS Appeal Hearing on Jan. 31, 2018). Student Doe does not recall making any bullying reports or being threatened by other students during kindergarten. ECF No. 80-4 at 7:21–8:7.

At his deposition, Mr. Brummell testified that he does not recall what Student #2 said to threaten Student Doe on November 21, 2016. ECF No. 80-1 at 76:12–78–2. He also testified that Student #2 had been threatening Student Doe with violence the prior week. ECF No. 84-34 at 137:10–138:11. In gym class, Student Doe was playing a game involving two teams of students throwing soft, foam-coated balls back and forth across a dividing line. ECF No. 84-28 at 66:19–20 (Plaintiffs' Exhibit J1, transcript of TCPS Appeal Hearing on Jan 31, 2018). Student #2 hit Student Doe in the head with a ball, and Student Doe reacted by choking Student #2. *Id.* at 68:12–20. The gym teacher, Mr. Kevin Baum, sent Student #2 to the nurse because he was visibly upset and had red marks on him. *Id.* at 68:21–69:10. Student Doe does not remember being hit in the head with a ball by another student in gym class. ECF No. 80-4 at 8:8–11.

After the incident, Mr. Baum called the parents of both students, leaving a message for Student #2's parents and speaking with Mr. Brummell. ECF No. 84-28 at 69:19–70:4. Mr. Brummell commended Mr. Baum over the phone about how he handled the situation. *Id.* at 81:9–17. Mr. Baum never heard back from the other parents. *Id.* at 79:21. In the parking lot during dismissal that day, Mr. Baum recognized Mr. Brummell and approached him for a conversation. *Id.* at 70:17–71:4. Mr. Baum explained that it was his responsibility to keep everyone physically and emotionally safe in gym class. *Id.* at 71:3–10. During that conversation, Mr. Baum stated, "We want to help these students before they end up in prison." ECF No. 80-2 at 98:8–10; ECF No. 84-28 at 71:11–14. Mr. Baum testified that he would have had a conversation with the same sentiment with the parents of a white child. ECF No. 84-28 at 75:1–17. Mr. Brummell reported the incident

to SMES, and SMES talked with Mr. Baum regarding Mr. Brummell's feelings about the prison comment. *Id.* at 75:20–76:21; ECF No. 84-46 (Plaintiffs' Exhibit N, timeline written by Dr. Indra Bullock).

Ms. Ann Nilsen, a guidance counselor, also had a conversation with Mr. Brummell about the incident in gym class. At her deposition, Ms. Nilsen testified that Mr. Brummell told her that he had instructed Student Doe to hit other children in self-defense if he felt threatened. ECF No. 80-6 at 21:8–10 (Board Defendants' Exhibit 5, deposition of Ann Nilsen). Ms. Nilsen responded that if that is how Mr. Brummell wanted to raise his child, she would not tell him differently, but that her "role as a counselor was to show [Student Doe] other ways to resolve conflict and not to strike first[.]" *Id.* at 21:11–17; ECF No. 84-33 at 9–19 (Plaintiffs' Exhibit K1, transcript of TCPS Appeal Hearing on Nov. 9, 2017). Mr. Brummell interpreted this comment as suggesting that he was raising his son to be a criminal. ECF No. 84-33 at 9–19. Mr. Brummell reported these comments to Dr. Indra Bullock, the principal at SMES. ECF No. 80-7 at 15:11–17, Dep. Ex. 1 (Board Defendants' Exhibit 6, deposition of Indra Bullock). Dr. Bullock memorialized the conversation in a letter dated November 22, 2016, indicating that she spoke with both Mr. Baum and Ms. Nilsen about their comments to Mr. Brummell and how he perceived them. ECF No. 80-7 at Dep. Ex. 1.

### 3. Incident 3 – January 27, 2017 (the "Hallway Incident") (ECF No. 5, ¶¶ 46–58)

The third incident was an alleged assault on Student Doe by defendant Diane Thomas, a music teacher, alleged to have occurred on January 27, 2017. ECF No. 5, ¶¶ 46–58. Student Doe remembers standing by a bulletin board in the hallway with another student who was then dismissed "because of the color of his skin," and then being picked up physically, taken to his

class, and dropped. ECF No. 80-4 at 15:8–12. He remembers crying and being injured on his side but does not remember any bruising or if he went to the nurse. *Id.* at 17:10–21.

Prior to the incident on January 27, 2017, Ms. Thomas witnessed Student Doe leaving his assigned seat and hitting other students in the cafeteria. ECF No. 80-8 at 17:1–12, 18:4–12 (Board Defendants' Exhibit 7, deposition of Diane Thomas). She informed other teachers about Student Doe's behavior. *Id.* at 19:16–18, 22:9–23:14., Ms. Thomas was on hallway duty where she witnessed Student Doe hit another student. *Id.* at 24:6–15, 31:17–33:17. Ms. Thomas approached and asked Student Doe to go to class and attempted to lead him using a hand on his upper back. *Id.* at 38:1–39:7. This was Ms. Thomas's first time attempting to lead Student Doe to class. *Id.* at 32:13–20. (In the mornings, Student Doe frequently had to be led from the hallway into the classroom by his kindergarten teacher, Ms. Sullivan. *Id.* at 23:15–21, 24:16–25:4.) Student Doe did not move, so Ms. Thomas picked him up from behind and walked with him in her arms for a few feet. *Id.* Student Doe kicked Ms. Thomas, and she dropped him. *Id.* at 40:17–41:2. Student Doe then walked over to Ms. Sullivan and into the classroom. *Id.* at 47:6–21. Ms. Thomas called Mr. Brummell to speak about the incident. ECF No. 79-3 at 28:7–11 (Thomas Exhibit 1, deposition of Diane Thomas).

Based on the Brummells' concerns, defendant Dr. Bullock, principal of SMES, investigated the incident and produced an Administrator-Teacher Conference Summary Form on January 27, 2017. ECF No. 80-7 at 23:16–24:11, Dep. Ex. 12/ECF No. 79-4 (Thomas Exhibit 2, Administrator-Teacher Conference Summary Form). Dr. Bullock testified that she reviewed the video footage from the hallway and interviewed Ms. Thomas and Ms. Sullivan. ECF No. 80-7 at 24:5–11. Ms. Thomas reported to Dr. Bullock that Student Doe pushed another student and then hid behind a cabinet, so she attempted to lead him to class. ECF No. 79-4. When Student Doe did

not move after Ms. Thomas put a hand on his back, she picked him up, he kicked her, and he fell to the floor. *Id.* Ms. Thomas then called Mr. Brummell to report that Student Doe had pushed another student and kicked a teacher. *Id.* Student Doe told Mr. Brummell that he did not push another student but was picked up by a teacher and dropped. *Id.* Ms. Sullivan reported that the student was swinging his arms and legs while in Ms. Thomas's arms. *Id.*

Dr. Bullock reviewed the video and wrote that Student Doe pushed another student and Ms. Thomas approached the boys who stood at the wall. *Id.* The other student began walking toward his class, and Student Doe walked toward the bulletin board. *Id.* Ms. Thomas put her arm out to lead Student Doe toward his classroom and tried to guide him from behind. *Id.* Student Doe began to turn away from her, so Ms. Thomas lifted him up from behind and under the arms and began to carry him toward the classroom and out of the video frame. *Id.* Student Doe was then seen running back into the frame and over to the cabinet where he hid his face. *Id.*[2] Dr. Bullock counseled Ms. Thomas that students are not to be lifted unless the staff member has received the proper training and the student is a danger to themselves or others, and to include all details of the interaction when speaking with parents. *Id.*

Ms. Thomas, Ms. Sullivan, and Dr. Bullock all reported that Student Doe did not appear to be injured and did not request medical attention. ECF Nos. 79-3 at 69:9–21; 79-5 at 30:4–10 (Thomas Exhibit 3, deposition of Indra Bullock). The Brummells did not seek medical attention for Student Doe. ECF No. 80-2 at 116:14–117:4.

---

[2] Dr. Bullock testified that the video was unavailable when she attempted to access it later. ECF No. 88-1 at 27:15–21 (Board Defendants' Reply Exhibit 1, deposition of Indra Bullock). Plaintiffs contend that the Board Defendants intentionally destroyed the video. ECF No. 84 at 7–8. Plaintiffs did not file a motion alleging spoliation. Regardless, the video would not show Ms. Thomas dropping Student Doe as they were out of frame at that moment.

Mr. Brummell testified that he "think[s] the tape showed that [Student Doe] and another kid are playing tag in the hallway going to homeroom class. [Ms. Thomas] runs up, grabs [Student Doe] from behind, and picks him up off his feet. He starts scrambling. He starts scrambling so she gets kicked. She drops him . . . ."[3] ECF No. 84-33 at 56:17–57:2.

### 4.  Incident 4 – April 4, 2017 (ECF No. 5, ¶¶ 59–63).

The fourth incident was an altercation between Student Doe and Students #3 and #4, two white students, alleged to have occurred on April 4, 2017. ECF No. 5, ¶¶ 59–63. On that date, Dr. Bullock spoke with Mr. Brummell over the phone about an incident in the cafeteria between Student Doe and two other students. ECF No. 80-7 at 34:11–35:9, Dep. Ex. 14. Student Doe stepped out of line in the cafeteria, and when he went back to his place, Student #3, the student behind him, would not let him back in line and pulled Student Doe by the shirt out of the line. *Id.* at Dep. Ex. 14. The two began to push each other, and Student Doe punched Student #3 until he fell to the floor. *Id.* Dr. Bullock checked to see that both students were okay, Student Doe indicated that he was fine, and Dr. Bullock asked him to continue through the line. *Id.* As Dr. Bullock attended to Student #3, Student #4 approached and told Dr. Bullock that Student Doe had pushed him. *Id.* Dr. Bullock asked Student Doe what happened, and Student Doe told her that Student #4 pushed him and mocked him in a baby voice, so Student Doe punched him. *Id.* Dr. Bullock interviewed other students and confirmed that the first incident was an altercation that began when Student #3 pushed Student Doe out of line. *Id.* But as to the second incident, no other student heard or saw Student #4 push Student Doe befor Student Doe responded with force. *Id.* Dr. Bullock brought Student Doe and Student #3 to her office where they both immediately apologized and wanted to play together while she made parent calls. *Id.* Then, as Dr. Bullock walked with Student

---

[3] It is the Court's understanding that Mr. Brummell never saw the video.

Doe to speak with Student #4 about keeping their hands to themselves, the students agreed and ran off together to play together during recess. *Id.*

In a letter dated April 30, 2017, the Brummells filed a formal complaint with Dr. Bullock alleging bullying and mistreatment of Student Doe based on racial bias. *Id.* at 75:1–15, Dep. Ex. 23. On June 12, 2017, the Superintendent of Schools, Dr. Kelly Griffith, responded by letter to the Brummells' formal charge, indicating that the incidents were investigated and were determined not to be the result of racial bias. *Id.* at Dep. Ex. 25.

Mr. Brummell contends that Student #3 "roughly horse-collared" Student Doe out of line and shoved him onto the floor. ECF No. 84-63, ¶ 20 (Plaintiffs' Exhibit U, affidavit of Joseph Brummell). But it is unclear that Mr. Brummell has personal knowledge of this incident, as he was not present. In paragraph 20 of his affidavit he states, "It is my understanding that . . . [Student #3] 'horse-collared' Student Doe . . . ." *Id.* Further, without evidence, Plaintiffs contend that Dr. Bullock reviewed the video of this incident and that Board Defendants destroyed the video.

### 5. Incident 5 – September 5, 2017 (ECF No. 5, ¶¶ 64–68)[4]

The fifth incident was an altercation between Student Doe and Student #5, a white student, alleged to have occurred on a school bus on September 5, 2017. ECF No. 5, ¶¶ 64–68. Student Doe does not recall being hit on the bus in September 2017, reporting to anyone that he was hit on the bus, being mistreated on the bus, the bus driver's name, or anyone yelling or cursing at him on the bus. ECF No. 80-4 at 20:10–21:2, 21:19–21. He also does not remember anyone taking things from him on the bus or reporting bus issues to his parents. *Id.* at 22:1–9.

---

[4] Although not listed in their Complaint, in Plaintiffs' opposition to the Board Defendants' Motion for Summary Judgment, they list another incident in their statement of facts in which, Plaintiffs allege, Student Doe was yelled at by Ms. Thomas for putting up his middle finger. ECF No. 84 at 11 (citing ECF Nos. 84-10; 84-43 (Plaintiffs' Exhibit M)). Because this incident is not alleged in the Complaint and there is no admissible evidence that it occurred, summary judgment in granted in favor of Defendants for any claims founded on this alleged incident.

Plaintiffs contend that on or about September 5, 2017, Student Doe was riding the bus home from school when he was assaulted by Student #5, who was at least twice Student Doe's size. Plaintiffs cite Exhibit U, Mr. Brummell's affidavit, but Mr. Brummell was not present on the bus at the time and therefore lacks personal knowledge of the incident. ECF No. 84-63 at ¶ 23. Mr. Brummell also contends that Student Doe was never taken to the nurse and defendant Gary Bramble, the bus driver, never completed a report of the incident. Plaintiffs also cite to Exhibits T, N, X, W, and LLL. ECF Nos. 84-61 (Plaintiffs' Exhibit T); 84-46 (Plaintiffs' Exhibit N); 84-69 (Plaintiffs' Exhibit X); 84-67 (Plaintiff's Exhibit W); and 84-42 (Plaintiffs' Exhibit LLL). But none of these exhibits refer to the alleged incident on September 5, 2017, and even if they did, the information would not appear to have been based on personal knowledge.

Plaintiffs requested to review the video footage from the bus on September 5, 2017, ECF No. 84-71 (Plaintiffs' Exhibit Y, email from Brummells), but Dr. Lynne Duncan, Assistant Superintendent for Administrative and Support Services, informed Dr. Bullock that only parents of children who were disciplined may be permitted to view video footage, ECF No. 84-73 (Plaintiffs' Exhibit Z, email with subject line, Re(2): Bus 217 video request).[5]

### 6. Incident 6 – September 7, 2017 (ECF No. 5, ¶¶ 69–78)

The sixth incident was alleged bullying Student Doe suffered from white students and mistreatment from Mr. Bramble on a school bus on September 7, 2017. ECF No. 5, ¶¶ 69–78. Student Doe has no memory of mistreatment on the bus in September 2017. ECF No. 80-4 at 20:10–21:2, 21:19–21. Plaintiffs contend that Student #6, an older white student, pulled off Student Doe's shoe and started a physical altercation with him, but Mr. Bramble, the bus driver, only

---

[5] Plaintiffs again contend that this footage was not preserved but have not formally sought relief for spoliation. ECF No. 84 at 11; *see also* n.2 *supra*.

addressed Student Doe. ECF No. 84 at 12. Further, if Mr. Bramble did address the white students

on the bus, his tone was polite, in contrast to him commanding Student Doe.[6] *Id.* Video footage of

the incident depicts multiple students, including Student Doe, out of their seats and, at times, Mr.

Bramble yelling at them. ECF No. 84-5 (Plaintiffs' Exhibit BB). Student Doe is shown out of his

seat and hitting or touching various students throughout the bus ride, and Mr. Bramble sometimes

reprimanding him, instructing him to be seated and keep his hands to himself, and stating that he

will tell his father about his behavior. *Id.* Dr. Bullock reviewed the video and stated that the video

did not show an older child beating up Student Doe. ECF No. 80-7 at 62:14–65:14, Dep. Ex. 18.

### 7. Incident 7 – September 11, 2017 (ECF No. 5, ¶¶ 79–84)

The seventh incident was alleged mistreatment Student Doe suffered from Mr. Bramble on

a school bus on September 11, 2017. ECF No. 5, ¶¶ 79–84. Student Doe has no memory of

mistreatment on the bus in September 2017. ECF No. 80-4 at 20:10–21:2, 21:19–21.

Plaintiffs contend that Mr. Bramble yelled at Student Doe even though he was not the

student out of his seat, and then Mr. Bramble tried to make a deal with Student Doe about not

telling his parents when he was bullied on the bus. Plaintiffs also contend that Mr. Bramble created

a disciplinary referral, but Dr. Bullock did not process the referral. ECF No. 84-46.

Video footage of the incident shows Student Doe and a white female student hitting,

pushing, and kicking at each other intermittently over the course of approximately nine minutes,

with Mr. Bramble intervening a few times to tell both students to stop hitting each other and to sit

---

[6] Plaintiffs accuse Dr. Bullock of failing to preserve the video of this incident while citing to a document stating that the video was turned over, ECF No. 84-11 (Plaintiffs' Exhibit DD, Nov. 3, 2017, letter from Indra Bullock), submitting the video as evidence, and citing to the video in their own brief, ECF No. 84-5 (Plaintiffs' Exhibit BB, bus footage from Sept. 7, 2017).

down.[7] ECF No. 84-17 (Plaintiffs' Exhibit FF). Mr. Bramble yells at Student Doe at times while reprimanding him for misbehavior. *Id.* The video footage does not show Mr. Bramble attempting to make a deal with Student Doe so that he would not tell his parents. ECF No. 80-7 at 62:14–65:14, Dep. Ex. 18.

On September 14, 2017, Dr. Bullock and another school official met with the Brummells and reviewed the video from the September 11, 2017, bus ride. *Id.* at Dep. Ex. 18, Dep. Ex. 25. Dr. Bullock's notes from the meeting capture Mr. Brummell's concerns related to Mr. Bramble's disparate treatment and note that all present agreed that the behaviors on the bus were not referable. *Id.* at Dep. Ex. 36. In her testimony at the TCPS Appeal Hearing, Dr. Bullock testified that Student Doe and the white student were not disciplined equally, and that Student Doe was spoken to multiple times while the white student was only spoken to once.[8] ECF No. 84-30 at 246:11–20 (Plaintiffs' Exhibit J3, transcript of TCPS Appeals Hearing on Jan 31, 2018).

### 8. Incident 8 – 2017–2018 School Year (ECF No. 5, ¶¶ 85–91)

Plaintiffs allege that Student Doe was bullied on the school bus by an older and larger white student throughout the 2017–2018 school year, and Mr. Bramble retaliated against Plaintiffs by throwing trash in their yard when they reported the incidents and requested corrective action. ECF No. 5, ¶¶ 85–91. Student Doe has no memory of mistreatment on the bus during this school year. ECF No. 80-4 at 20:10–21:2, 21:19–21. At the meeting on September 14, 2017, where the

---

[7] Plaintiffs again contend that they were not allowed to review the video footage, record evidence reflects that they reviewed the footage on September 14, 2017, and they submitted the video as an exhibit. ECF No. 80-6 at Dep. Ex. 36; ECF No. 84-17.

[8] On November 9, 2017, and January 31, 2018, the Talbot County Public Schools held an appeal hearing pursuant to § 4-205(c)(3) of the Education Article of the Maryland Code to address allegations of racial bias in the treatment of Student Doe, then a first-grade student. Md. Code Ann., Educ. § 4-205(c)(3); ECF Nos. 84-33 & 84-28. The proceeding was an appeal from a decision issued by the superintendent. ECF No. 84-33 at 17:8–18:1.

Brummells met with Dr. Bullock and another school official to review the video from the September 11, 2017, bus ride, a school official offered to change Student Doe's morning and afternoon bus rides, but the Brummells requested that Student Doe remain on the bus and to move his assigned seat. ECF No. 80-6 at Dep. Ex. 36.

In support of their contention that Student Doe was bullied on the bus on a daily basis, Plaintiffs cite their Exhibits K and T, Mr. Brummell's testimony at the TCPS Appeals Hearing and Mr. Brummell's notes. *See* ECF No. 84-33 at 55:4–12; ECF No. 84-61. But Mr. Brummell was not present to witness any of the alleged conduct.

### 9. Incident 9 – November 30, 2017 (ECF No. 5, ¶¶ 89–91)

Mr. Brummell suspected that Mr. Bramble was littering on his commercial property in November 2017. ECF No. 80-2 at 181–82, 187:11–21. Based on a littering complaint, Sergeant Chase of the Talbot County Sheriff's Office met with Mr. Brummell on November 30, 2017. *Id.* at 181–82. When Sgt. Chase returned on December 1, 2017, Mr. Brummell shared that he suspected Mr. Bramble. *Id.* at 186–87. After an investigation, Sgt. Chase charged Mr. Bramble with littering. *Id.* at 187:2–4. Those charges were ultimately dropped. *Id.* at 187:5–10. Plaintiffs note that no disciplinary action was taken against Mr. Bramble. ECF No. 84-54 at 11:18–12:10 (Plaintiffs' Exhibit PPP, deposition of Paula Yiannakis).

### 10. Incident 10 – September 15, 2017 (ECF No. 5, ¶¶ 92–99)

Plaintiffs allege that Student Doe was assaulted by a larger white student in the school cafeteria bathroom on September 15, 2017, and school staff failed to keep him safe. ECF No. 5, ¶¶ 92–99. Dr. Bullock investigated the incident and took notes on her investigation. ECF No. 80-7 at 104:17–105:11, Dep. Ex. 39. During lunch, Student Doe entered the bathroom, and Student #7 entered the bathroom behind him. *Id.* Student #7 pushed Student Doe, and the two began

13

fighting. *Id.* Student Doe ran into a stall. *Id.* When he came out, Student #7 was still in the bathroom and the two resumed fighting. *Id.* During the fight, Student Doe choked Student #7. *Id.* Student #8 entered the bathroom and, along with Student Doe, began fighting Student #7.  *Id.* Student #7 "had to 'fight his way out.'" *Id.* Student Doe and Student #8 exited the bathroom and had no visible marks. *Id.* Student #7 had a red mark near his eye and a scratch on his arm. *Id.* Student #7 told Dr. Bullock that Student Doe has "more moves" than he does. *Id.* Student Doe and Student #7 told her that they fought in the bathroom during the previous year, they had taken karate classes together, and had practiced "their moves." *Id.* Student Doe reported the fighting to a teacher in the cafeteria and to his classroom teacher, who then sent him to the nurse. *Id.* Dr. Bullock conferenced separately with the three boys and made parent phone calls for all three. *Id.* During a conference the following day with Student Doe and Student #7 together, Dr. Bullock told them that it is dangerous to fight in the bathroom, and both boys promised not to do it again. *Id.*

Dr. Bullock also spoke with the teacher to whom Student Doe initially reported the incident about monitoring the bathroom and how to get more information from students when they have concerns. *Id.* SMES has a one-student-at-a-time policy for the cafeteria bathroom. *Id.*; ECF No. 84-30 at 217:10–18. Some of the teachers in the cafeteria at the time were unaware of the monitoring policy, while the teacher to whom Student Doe reported the fight was aware of the policy. ECF No. 84-30 at 252:1–253:8.

Student Doe does not remember an incident with another student in the cafeteria bathroom in September 2017. ECF No. 80-4 at 22:10–21. Plaintiffs summarize their own telling of this incident with citations to Mr. Brummell's testimony at the TCPS Appeals Hearing, which is not based on personal knowledge. *See* ECF No. 84 at 16–17 (citing ECF No. 84-33 (Plaintiffs' Exhibit K1)). Mr. Brummell testified that Student #7 entered the bathroom after Student Doe, kicked

Student Doe, and Student Doe then went into a stall and locked the door. ECF No. 84-33 at 59:17–60:2. When Student Doe emerged, Student #7 was still present, and the two began to fight. *Id.* at 60:2–4. According to Mr. Brummell, Student #7 is white, much older and much larger than Student Doe, and goes to the martial arts studio five days a week for two hours a day, while Student Doe only goes two days a week for 35 minutes a day. *Id.* at 60:15–19. Mr. Brummell also testified that Student #8 helped Student Doe because "[Student #8] is known for helping out whoever is on the short end of things." *Id.* at 60:8–19. Mr. Brummell testified that when Student Doe told the teacher, the teacher told him to sit down, keep his hands to himself, and never expressed any concern. *Id.* at 61:19–62:2. Further, according to Mr. Brummell, this teacher is the same staff member who determined where students are placed on the school bus and kept placing Student Doe next to students who had bullied him. *Id.* at 62:11–19.

### 11. Incident 11 – June 5, 2018 ("Music Room Incident") (ECF No. 5, ¶¶ 100–02)[9]

Plaintiffs allege that Ms. Thomas abused and bullied Student Doe by accusing him of bullying other students in front of a class of students in the music room on June 5, 2018. ECF No. 5, ¶¶ 92–99. On that date, a female student in Ms. Thomas's music class was in the back of the room crying. ECF No. 79-3 at 12:17–20. A student informed Ms. Thomas that Student Doe was being mean to the female student telling her that "she's no good and nobody likes [her]," and

---

[9] Although not alleged in the Complaint, in the statement of facts in their opposition to the Board Defendants' Motion for Summary Judgment, Plaintiffs allege a "groin incident" in 2017. ECF No. 84 at 18. At the TCPS Appeals Hearing, Mr. Brummell testified that, in 2017, while Ms. Thomas was on lunch duty, a white student hit Student Doe in the groin, and Student Doe hit the other student back. ECF No. 84-33 at 77:16–21; ECF No. 84-34 at 78:1–2. Ms. Thomas sent the white student to the nurse's office but told Student Doe to sit down and keep his hands to himself. ECF No. 84-33 at 77:16–21; ECF No. 84-34 at 78:1–2, 106:14–107:12. Mr. Brummell was not present for this incident. Because this incident is not alleged in the Complaint and there is no admissible evidence that it occurred, to the extent that Plaintiffs have any claims founded on this alleged incident, summary judgment is granted in favor of Defendants.

telling her other things that made her cry. *Id.* at 13:8–14. Ms. Thomas spoke with the other girls in the back of the room, who confirmed that Student Doe was being mean to the female student. *Id.* at 14:10–15:19. In response, Ms. Thomas asked the boys in the class if Student Doe had ever hit them, and they all raised their hands. *Id.* at 13:3–7, 16:20–17:4. Ms. Thomas had seen Student Doe hitting other students in the cafeteria. *Id.* at 16:20–17:4.

The Brummells submitted a formal complaint to Dr. Bullock, who then investigated the matter and reported the results. ECF No. 84-52 at 118:17–119:13 (Plaintiffs' Exhibit P, deposition of Indra Bullock); ECF No. 80-7 at Dep. Ex. 47. In their complaint, the Brummells stated, "We are making a formal complaint against Diane Thomas for publicly shaming our son [Student Doe] in music class and encouraging/inviting the students in the classroom to be participants in the shaming." ECF No. 80-7 at Dep. Ex. 47. According to the complaint, Ms. Thomas, in front of the class, said to Student Doe, "you know that is bullying, right[,]" and then said, "everyone [Student Doe] has bullied or hit raise your hand." *Id.* Then, according to the complaint, Ms. Thomas asked Student Doe, "do you see all the people you bullied and hit." *Id.* Student Doe responded that he had not bullied any of the students, but Ms. Thomas kept repeating, "you bullied these students." *Id.* Dr. Bullock counseled Ms. Thomas after an investigation. ECF No. 80-8 at 71:18–72:6. After this incident, there was as disciplinary referral placed in Ms. Thomas's file, and she was involuntarily transferred from SMES to Easton Elementary School. *Id.* at 72:7–21; ECF No. 84-54 at 9:19–10:13, 11:8–12.

Student Doe does not remember an incident where Ms. Thomas called him a bully and asked the other students whether they had been bullied by him. ECF No. 80-4 at 23:1–8.

### 12. Incident 12 – January 23, 2019 (ECF No. 5, ¶¶ 103–06)[10]

Plaintiffs allege that on or about January 23, 2019, Student Doe was walking to class and was tripped by Student #9.[11] ECF No. 5, ¶¶ 103–06; ECF No. 84-53 at 4 (Bullying, Harassment, or Intimidation Reporting Form); ECF No. 84-63, ¶ 25. Mr. Brummell submitted a Bullying, Harassment, or Intimidation Reporting Form, prompting an investigation by Dr. Bullock. ECF No. 80-7 at 132:6–19. Dr. Bullock explained that all bullying reports and any related paperwork were submitted to Student Services at the end of the year. *Id.* at 133:2–10. Plaintiffs contend that they were told Student #9 would be moved to another school, but that transfer did not occur. ECF No. 84-63, ¶ 25.

### 13. Incident 13 – April 5, 2019 (ECF No. 5, ¶¶ 107–09)

On April 5, 2019, Student Doe was tripped in the school cafeteria by Student #9. ECF No. 5, ¶¶ 107–09; ECF No. 84-52 at 133:18–135:3; ECF No. 80-4 at 23:18–24:9; ECF Nos. 84-62 & 84-64, (Plaintiffs' Exhibits TT & UU (videos of the incident)). Student #9 had first attempted to trip another student before successfully tripping Student Doe. ECF No. 80-7 at Dep. Ex. 66; ECF Nos. 84-62 & 84-64. Dr. Bullock saw Student Doe face down on the ground and went to see what was wrong. ECF No. 80-7 at Dep. Ex. 66. She saw that, as he got up, Student Doe had his hand on his head and face, and she told him that he was not bleeding. *Id.* Dr. Bullock asked him if he was okay, and Student Doe said that he was hurt. *Id.* Dr. Bullock noted that his eyes were glassy, and he looked confused. *Id.* Another teacher called the nurse on the radio, and Dr. Bullock requested

---

[10] Though not alleged in the Complaint, in the recitation of facts in their opposition to the Board Defendants' Motion for Summary Judgment, Plaintiffs allege an incident in October 2018. ECF No. 84 at 19. Because this incident is not alleged in the Complaint, to the extent that Plaintiffs have any claims that rely on this alleged incident, summary judgment is granted.

[11] In the Complaint, Plaintiffs allege that this student is white, ECF No. 5, ¶ 103, but Student Doe testified that he is African American, ECF No. 80-4 at 23:18–24:9.

that Mr. Baum come and check for signs of a concussion, based on his training as a coach. *Id.* Dr. Bullock supported Student Doe as they walked toward the hall, where they met a nurse tech who checked Student Doe. *Id.* Dr. Bullock called Mr. Brummell to let him know that Student Doe fell in the cafeteria and hit his head. *Id.* Mr. Brummell stated that Mrs. Brummell would pick Student Doe up from the nurse's office. *Id.* When Mrs. Brummell arrived, she called a pediatrician's office and was told to take Student Doe to the emergency room. *Id.*

Once Mrs. Brummell left with Student Doe, Dr. Bullock reviewed the video of the incident. *Id.* Dr. Bullock determined that Student Doe had been tripped by Student #9. *Id.* She reviewed the policy on student conduct and determined that the tripping offense most closely matched "serious bodily injury" and ultimately recommended that Student #9 be removed to an alternative placement for the rest of the year. *Id.* Dr. Bullock called Student #9's father and told him about the incident and that Student #9 would be suspended for five days. *Id.* Student #9 did not remain at SMES after this incident; he was sent to the alternative learning center at the Board's offices. *Id.* at Vol. II, 70:2–19.

Plaintiffs contend that Dr. Bullock emailed Dr. Duncan stating that the school had knowledge that Student #9 had previously bullied Student Doe, that the incident occurred due to improper staffing,[12] and that proper procedure was not followed when the parent was called instead of 911. *See* ECF Nos. 84-66 (Plaintiffs' Exhibit VV, email from Indra Bullock on May 20, 2019) & 84-68 (Plaintiffs' Exhibit WW, Indra Bullock notes). However, the notes upon which Plaintiffs rely are notes that Dr. Bullock took on a telephone call from Richard Potter of the NAACP where Mr. Potter explained certain concerns that he had, including alleged prior bullying, improper

---

[12] Plaintiffs contend that there were over 300 students under the supervision of only five staff members, but video footage of the incident shows approximately 50 students in the cafeteria at the time—not the entire student body.

staffing, and the failure to follow proper procedure, which Dr. Bullock merely transcribed. *See* ECF No. 84-66. Plaintiffs also contend that the Board and its employees were aware that Student #9 had incidents of similar behaviors. ECF No. 84-70 (Plaintiffs' Exhibit XX, Indra Bullock notes).

### 14. Incident 14 – May 13, 2019 (ECF No. 5, ¶¶ 110–12)

Plaintiffs allege that Defendants failed to take appropriate action when a white student threw pencils in class and hit Student Doe in the head. ECF No. 5, ¶¶ 110–12. On May 13, 2019, Student #10 threw a box of supplies, and a pencil hit Student Doe. ECF No. 80-7 at 137:12–18. Dr. Bullock investigated the incident and determined that Student #10, a cognitively disabled student, was upset and threw her pencil box, but not at anyone in particular. A pencil hit Student Doe and another student. *Id.* at Vol II, 80:20–81:5. Student #10 was given a disciplinary referral. *Id.* at 81:12–15. Student Doe does not recall this incident. ECF No. 80-4 at 28:9–15.[13]

### 15. Incident 15 – May 31, 2019 (ECF No. 5, ¶¶ 113–29)

Plaintiffs allege that Defendants failed to take appropriate action when Student #11, a white student, made racist comments to Student Doe. ECF No. 5, ¶¶ 113–29. On May 31, 2019, Student #11 made a statement that "all black people have poop on their heads." ECF No. 80-7 at 78:17–79:2, Ex. 75 (Indra Bullock notes). The student also indicated that black people and white people could not be friends. *Id.* at Dep. Ex. 75. Student Doe stated that black and white people could be friends, and the two began to argue before Student #10 told Student Doe to "shut the f*** up." *Id.* Student #11 was disciplined. *Id.* at Vol II, 79:6–12. Student Doe recalls an incident where a student made a comment about all black people having poop on their heads but does not remember whether other people told him about the comment or whether he heard it. ECF No. 80-4 at 28:16–29:8. He

---

[13] This incident is not mentioned in Plaintiffs' opposition to Defendants' summary judgment motions. ECF No. 84.

also does not remember whether he told anyone at school that Student #11 was making those comments. *Id.* at 29:9–15.

## II.    STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed); *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus.*, 475 U.S. at 587, but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

### III.    DISCUSSION

#### A.  Constitutional Claims

In Count X, Plaintiffs allege a 42 U.S.C. § 1983 claim for equal protection and substantive due process violations of the Fourth and Fourteenth Amendments against Ms. Thomas. Specifically, Plaintiffs assert that Ms. Thomas used excessive force when she seized Student Doe during the Hallway Incident and that her actions were motivated by racial animus. Plaintiffs' equal protection claim seems to be premised on the fact that Ms. Thomas only seized Student Doe, and not the other student in the hallway.

The Fourth Amendment to the U.S. Constitution protects individuals from unreasonable governmental searches and seizures. U.S. Const. amend. IV. To seize or use force against students in a school context, (1) there must be "reasonable grounds for suspecting that . . . the student has violated or is violating either the law or the rules of the school[,]" and (2) the use of force or restraint must be "reasonably related in scope to the circumstances which justified [it] in the first place." *Wofford v. Evans*, 390 F.3d 318, 326–27 (4th Cir. 2004) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341–42 (1985)).

Under 42 U.S.C. § 1983, a school official's use of force against a student or to restrain a student "'may give[ ] rise to an independent federal cause of action to vindicate substantive due process rights.'" *Savoy v. Charles Cnty. Pub. Sch.*, 798 F. Supp. 2d 732, 737 (D. Md. 2011) (quoting *Hall v. Tawney*, 621 F.2d 607, 611 (4th Cir. 1980)). An assault or battery by a school official, as defined by state law, is insufficient; "the threshold for finding a Fourteenth Amendment violation in the school context is 'of [a] different . . . order of magnitude' than for state common-law claims." *Id.* (quoting *Hall*, 621 F.2d at 613). The applicable test is "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by

malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Hall*, 621 F.2d at 613; *Brown ex rel Brown v. Ramsey*, 121 F. Supp. 2d 911, 918 (E.D. Va. 2000); *see also H.H. ex rel. H.F. v. Moffett*, 335 F. App'x 306, 313 (4th Cir. 2009) (applying the shocks-the-conscious test to the use of restraint against a disabled student).

Here, Plaintiffs' Fourth Amendment claim is based on an alleged improper seizure and use of excessive force by Ms. Thomas based on the Hallway Incident. ECF No. 85 at 9–10. Ms. Thomas does not contend that she did not seize Student Doe when she picked him up, but she argues that the seizure was reasonable. ECF No. 79-1 at 18. The record evidence shows that Ms. Thomas had reasonable grounds to suspect that Student Doe was violating school rules by hitting another student in the hallway, and her attempt to get Student Doe to class was reasonably related in scope to Student Doe's actions. *See Wofford*, 390 F.3d at 326. When Ms. Thomas asked Student Doe to go to class, he refused. Ms. Thomas then tried to guide Student Doe to class using a hand on his back, but he resisted. Ms. Thomas then picked him up to carry and walk him the short distance to his classroom. Following Student Doe's refusal to go to class, Ms. Thomas's actions were justified and reasonably related to the scope of the circumstances supporting their justification. Ms. Thomas's actions do not rise to the level of an unconstitutional seizure or excessive use of force.

Plaintiffs allege that Ms. Thomas violated Student Doe's substantive due process rights by using excessive force when physically restraining him during the Hallway Incident. However, Ms. Thomas's actions in picking up Student Doe and subsequently dropping him do not shock the conscience, as required to establish a substantive due process claim. First, while Student Doe recalls being hurt during the incident, he did not manifest any severe physical injury or

psychological trauma, and there is no evidence that Ms. Thomas sought to inflict a severe injury. *See Hall*, 621 F.2d at 613. Second, Plaintiffs offer no evidence that Ms. Thomas's actions were disproportionate to the need presented. *Id.* Student Doe pushed another student and, then when Ms. Thomas asked him to go to class, Student Doe refused to comply. Ms. Thomas then attempted to lead Student Doe to class, but he resisted. Ms. Thomas then lifted him up to carry him the last few feet to the classroom. Third, there is no evidence that Ms. Thomas's actions were "so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Id.* And there is no evidence, other than repeated statements in Plaintiffs' briefs, that Ms. Thomas slammed Student Doe to the ground or that her actions were motivated by racial animus.

In their opposition to Ms. Thomas's summary judgment motion, Plaintiffs argue that Ms. Thomas violated Student Doe's right to equal protection by targeting Student Doe, the black student, and not the other student, who was white. ECF No. 85 at 9. Insofar as Plaintiffs intended to plead an equal protection claim in the Complaint, any such claim cannot survive summary judgment. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The evidence does not support any claim of disparate treatment based on Student Doe's race. The white student involved in the incident complied with Ms. Thomas's instruction to go to class, but Student Doe resisted. The two students were not similarly situated.

The Court finds no genuine dispute of material fact to preclude summary judgment in favor of Ms. Thomas on Count X.

**B. 42 U.S.C. § 1982**

In Count XIII of the Complaint, Plaintiffs assert a claim under 42 U.S.C § 1982 against

Mr. Bramble predicated on Mr. Bramble's alleged purposeful littering on the Brummells' property.

Under 42 U.S.C. § 1982, "[a]ll citizens of the United States shall have the same right, in

every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell,

hold, and convey real and personal property." To state a claim under § 1982, a plaintiff must show

"(1) membership in a protected class; (2) discriminatory intent on the part of the defendant[;] and

(3) interference with the rights or benefits connected with the ownership of property." *White v.*

*City of Annapolis by & through City Council*, 439 F. Supp. 3d 522, 541 (D. Md. 2020) (quoting

*Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004)).

"Although § 1982 does not itself contain a time limitation, the Fourth Circuit has held that

the statute of limitations found in the 'most analogous' state law applies." *Stokes v. JPMorgan*

*Chase Bank, NA*, Civ. No. 11-02620, 2012 WL 527600, at *7 (D. Md. Feb. 16, 2012) (citing

*Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002)). In *Stokes*, the Court determined that the most

appropriate limitations period is Maryland's three-year statute of limitations for personal injury

claims. *Id.* (citing Md. Code Ann., Cts & Jud. Proc. § 5–101); *see also Jersey Heights*

*Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("[T]he personal nature of

the right against discrimination justifies applying the state personal injury limitations period.")).

While the statute of limitations is a question of state law, when a cause of action accrues is

a federal question. *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 886 (4th Cir.

2023) (citing *McDonough v. Smith*, 588 U.S. 109, 115 (2019)). "In federal court, it is the standard

rule that the accrual occurs when the plaintiff has a complete and present cause of action, that is,

when the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning*

*Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (cleaned up)). In other words, "a plaintiff's cause of action accrues, and the limitations period commences, when the plaintiff knows or has reason to know of his injury . . . ." *Id.*; *see also Harris v. Obenshain*, 452 F. Supp. 1172, 1177 (E.D. Va. 1978) (finding that § 1982 claim accrued when plaintiff discovered the loss to his property).

In their Complaint, Plaintiffs allege that Mr. Bramble deliberately threw trash into Plaintiffs' yard on a daily basis as a form of racially motivated retaliation against Plaintiffs for seeking fair treatment of Student Doe. ECF No. 5, ¶¶ 89–91. However, during discovery, it became clear that the littering occurred at Mr. Brummell's commercial property. ECF No. 84-36 at 176–80 (Plaintiff's Exhibit JJ, deposition of Joseph Brummell); ECF No. 84-38 (Plaintiffs' Exhibit KK, Talbot County Sheriff's Office Incident Report). There is no evidence to suggest that the littering at Mr. Brummell's commercial property interfered with Mrs. Brummell's or Student Doe's property rights. Therefore, the § 1982 claim on behalf of Student Doe and Mrs. Brummell must fail.

Mr. Brummell's § 1982 claim also fails because the claim is barred by the statute of limitations. There is a three-year statute of limitations for § 1982 claims. *See Stokes*, 2012 WL 527600, at *7. For Plaintiffs' § 1982 claim to be timely, it must have been brought within three years of when the cause of action accrued. In his deposition, Mr. Brummell confirmed that on November 30, 2017, when he contacted the police, he believed that Mr. Bramble was the perpetrator. ECF No. 84-36 at 181–89. The incident report written by Sergeant Chase states that on December 1, 2017, Mr. Brummell informed Sgt. Chase that he suspected Mr. Bramble because of the ongoing issues regarding Student Doe. ECF No. 84-38. Although Sgt. Chase did not inform Mr. Brummell that Mr. Bramble was his suspect until after Mr. Bramble was charged, Sgt. Chase

issued a criminal citation for littering to Mr. Bramble on December 5, 2017. The cause of action accrued on November 30, 2017, because all facts giving rise to any § 1982 violation by Mr. Bramble were known to Mr. Brummell on that date. To have been timely, the claim must have been filed within three years of November 30, 2017. Plaintiffs' Complaint was filed in state court on April 5, 2022, ECF No. 5, about a year and a half after the statute of limitations expired on November 30, 2020.[14]

Even if Mr. Brummell's § 1982 claim was timely, it would fail on the merits. Plaintiffs have not provided any evidence showing that Mr. Bramble littered on Mr. Brummell's commercial property with discriminatory intent, as is necessary to succeed on a claim under § 1982. *White*, 439 F. Supp. 3d at 541. There is no evidence that Mr. Bramble littered on the property because of any racial animus towards Mr. Brummell.

Accordingly, summary judgment is granted in favor of Mr. Bramble as to Count XIII.

### C.  State-Law Claims

This Court has granted summary judgment on all federal claims, and the remaining claims are all predicated on state law. The suit no longer presents a federal question.

This Court has original jurisdiction over federal claims under 28 U.S.C. § 1331, which "confers upon district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) (quoting 28 U.S.C. § 1331). Federal district courts do not have original jurisdiction over state-law claims, unless the requirements of 28 U.S.C. § 1331(a) are satisfied, and those requirements are not satisfied in this case. *See* 28 U.S.C. § 1331(a) (conferring original jurisdiction

---

[14] Even if Mr. Brummell's suspicions were not confirmed until after Mr. Bramble was charged, ECF No. 84-36 at 186–89, Mr. Bramble was charged on December 5, 2017, ECF No. 84-38. Plaintiffs' Complaint was docketed on April 5, 2022, ECF No. 5, more than three years after December 5, 2017.

of civil actions between parties of diverse citizenship where the matter in controversy exceeds $75,000). This Court may only adjudicate Plaintiff's state-law claims through its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). A district court may exercise supplemental jurisdiction of claims for which it lacks original jurisdiction if those claims "are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

However, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim" when it has "dismissed all claims over which it has original jurisdiction." The Fourth Circuit has recognized that a district court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). "That said, generally, when a district court dismisses all federal claims in the early stages of litigation—e.g., at the summary-judgment stage—it should decline to exercise jurisdiction over any remaining pendent state law claims." *Id.* (cleaned up); *accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). The Court may exercise its discretion by remanding a case in a removed action. *Open Just. Baltimore v. Baltimore City L. Dep't,* Civ. No. ELH-22-1901, 2023 WL 5153654, at *28 (D. Md. Aug. 10, 2023), *aff'd*, No. 23-2293, 2024 WL 5182408 (4th Cir. Dec. 20, 2024) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 353–57).

In weighing judicial economy, convenience, fairness, and comity, *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7, this Court finds that these factors weigh in favor of remanding the remaining state law claims back to state court. The Supreme Court has stated, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Remanding the remaining state-law claims will do just that. Therefore, the remaining state-law claims in Counts I, II, III, IV, and V of the Complaint will be remanded to the Circuit Court for Talbot County, Maryland.

## IV.    CONCLUSION

For the foregoing reasons, Ms. Thomas's and the Board Defendants' motions for summary judgment, ECF Nos. 79 & 80, will be GRANTED as to Count X and XIII. This Court declines to exercise supplemental jurisdiction over the remaining state-law claims and shall remand Counts I through V to the Circuit Court for Talbot County, Maryland, where this suit originated.

A separate Order will follow.


   3/26/25   
Date

_____
Matthew J. Maddox
United States District Judge